IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

01 MAY 18 PM 2: 13

U.S. DISTRICT COURT
H.D. OF ALABAMA

MEIOSA JACOBS-ALLENDER,                    )
JOSEPH ALLENDER, and VENIX                 )
JEFFERS, individually and as a representative )
of a class of similarly situated persons,   )
                                            )
         Plaintiffs,                        )
                                            )
vs.                                         )
                                            )          **NOTICE OF REMOVAL**
WELLS FARGO HOME MORTGAGE,                  )
INC. f/d/b/a CROSSLAND MORTGAGE            )
CORPORATION; CROSSLAND                      ) (        CV-01-S-1300-S
MORTGAGE CORPORATION;                       )
DEFENDANTS A, B & C, intending to          )
refer to those persons, firms, corporations, )
or other legal entities doing business as WELLS )
FARGO HOME MORTGAGE, INC.;                  )
DEFENDANTS C, D & E, intending to refer to )
those persons, firms, corporations, or other legal )
entities doing business as CROSSLAND        )
MORTGAGE CORPORATION; and                   )
DEFENDANTS F, G & H, intending to refer to )
those persons, firms, corporations, or other legal )
entities that were in contract with Plaintiffs with )
respect to Plaintiffs' VA mortgage loans;   )
DEFENDANTS I, J & K, intending to          )
refer to those persons, firms, corporations, )
or other legal entities that paid yield spread )
premiums, broker premiums, service          )
release premiums or similar fees to the     )
Plaintiffs and/or class members' mortgage   )
brokers in connection with their loan       )
closings; DEFENDANTS L, M & N,              )
intending to refer to those persons, firms, )
corporations, or other legal entities that  )
are the parent, subsidiary, predecessor, or )
successor in interest to any of the         )
defendants, named or fictitious, referred to )
herein; all of whose identities are unknown )
at the present time, but will be substituted )
by amendment when ascertained,              )
                                            )
         Defendants.                        )

1285548.1

Defendant Wells Fargo Home Mortgage, Inc. f/d/b/a Crossland Mortgage Corporation ("Wells Fargo"), through its undersigned counsel, hereby gives notice of the removal of this action pursuant to 28 U.S.C. § 1441. Removal is proper because this Court has federal question jurisdiction over Counts I and III of this action under 28 U.S.C. § 1331 and supplemental jurisdiction over Counts II and III of this action under 28 U.S.C. § 1367(a).

1.      On March 23, 2001, Plaintiffs filed the action captioned Jacobs-Allender v. Wells Fargo Home Mortgage, Inc., Case No. CV-01-01894, in the Circuit Court of Jefferson County, Alabama ("State Court"). A copy of the Complaint in the State Court action (the "Complaint"), which is the only pleading received by Wells Fargo from Plaintiffs, is attached hereto as Exhibit A as required by 28 U.S.C. § 1446(a).

2.      As stated in the Complaint, Plaintiffs Meiosa Jacobs-Allender, Joseph Allender, and Venix Jeffers initiated this action "individually and on behalf of a nationwide class of similarly-situated persons" against Wells Fargo and Crossland Mortgage Corporation ("Crossland"). Plaintiffs allege Wells Fargo is "a corporation organized and existing under the laws of the State of California," and allege that Crossland is "a corporation organized and existing under the laws of the State of Utah." (Compl. ¶¶ 3-4). This action was also brought against fictitious Defendants A through N, whose identities are as yet undefined by Plaintiffs, but which fictitious defendants are alleged to be as follows: fictitious Defendants A, B, and C are purportedly intended "to refer to those persons, firms, corporations, or other legal entities doing business as Wells Fargo Home Mortgage, Inc."; fictitious Defendants C, D, and E are purportedly intended "to refer to those persons, firms, corporations, or other legal entities doing business as Crossland Mortgage Corporation"; fictitious Defendants F, G, and H are purportedly intended "to refer to those persons,

1285548.1                                          2

firms, corporations, or other legal entities that were in contract with Plaintiffs with respect to Plaintiffs' VA mortgage loans"; fictitious Defendants I, J, and K are purportedly intended "to refer to those persons, firms, corporations, or other legal entities that paid yield spread premiums, broker premiums, service release premiums or similar fees to the Plaintiffs and/or class members' mortgage brokers in connection with their loan closings"; fictitious Defendants L, M, and N are purportedly intended "to refer to those persons, firms, corporations, or other legal entities that are the parent, subsidiary, predecessor, or successor in interest to any of the Defendants, named or fictitious, referred to herein."

3.     Specifically, Plaintiffs purport to bring this action on behalf of "all persons in the United States who, at any time, during the applicable limitations period, obtained a VA loan funded or table-funded by Defendant where the aggregate charges and fees relating to the costs of loan origination (including loan origination fees, lender paid revenue to brokers, yield spread premiums, rebates, service release premiums, processing fees, application fees, administrative fees, broker fees, lender fees, underwriting fees, document preparation fees and the like) exceeded one percent (1%) of the amount of the loan, or otherwise included an illegal charge or fee." (Compl. ¶ 39).

4.     The Complaint alleges three claims: violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2607 (Count I); breach of contract based on the alleged RESPA violation (Count II); and a separate count alleging liability to the fictitious Defendants (Count III). This action may be removed to this Court pursuant to 28 U.S.C. § 1441 because this Court has original jurisdiction under 28 U.S.C. § 1331, i.e., this is a civil action arising under the laws of the United States. Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of Wells Fargo's receipt of the Complaint on April 19, 2001.

## THE RESPA COUNT CONFERS SUBJECT
## MATTER JURISDICTION ON THIS COURT

5.      Count I of the Complaint is entitled and alleges "violation of the Real Estate Settlement Procedures Act." 12 U.S.C. § 2607. The citation to the United States Code indicates RESPA is a federal statute – or a "law[]. . .of the United States" for purposes of federal question jurisdiction. 28 U.S.C. § 1331.

6.      Count II of the Complaint alleges breach of contract, the breach of which contract is premised upon a violation of RESPA. Absent a RESPA violation, there can be no recovery for breach of contract. Thus, the breach of contract claim is so related to the RESPA claim that it forms part of the same case or controversy as the RESPA claim. This Court therefore has supplemental jurisdiction over this breach of contract claim pursuant to 28 U.S.C. § 1367(a), which provides in relevant part:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Removal of this entire action to federal court is proper because application of federal law predominates over state law considerations. 28 U.S.C. § 1441(c) provides:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by Section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

Because the breach of contract action, which might otherwise be a state law matter, is completely dependent upon a conclusion that Wells Fargo and the other Defendants violated RESPA, removal of the breach of contract count is proper.

1285548.1                                                    4

## **CONCLUSION**

As required by 28 U.S.C. § 1446(d), copies of this Notice of Removal are being served upon

Plaintiffs and filed with the State Court.

WHEREFORE, Wells Fargo hereby requests that this Court assume full jurisdiction over this

action as provided by law.

Respectfully submitted,

MAYNARD, COOPER & GALE, P.C.

Dated: May 18, 2001.                    By _____

Sarah Y. Larsón (YAT006)
Alexander J. Marshall (MAR116)
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203-2602

**Attorneys for Defendant Wells Fargo Home
Mortgage, Inc.**

1285548.1                              5

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon:

David Donaldson
Tammy McClendon Stokes
2 North 20th Street, Suite 100
Birmingham, AL 35203

Kieron F. Quinn
Richard S. Gordon
Martin E. Wolf
Quinn, Gordon and Wolf, Chtd.
40 W. Chesapeake Avenue, Suite 408
Towson, Maryland 21204

by placing a copy of same in the United States Mail, properly addressed and postage prepaid this
18th day of May, 2001.

Of Counsel

United States Corporation Company
2711 Centerville Road Suite 400, Wilmington, L~, 19808
(302) 636-5400

United States Corporation Company                    The Prentice-Hall Corporation System, Inc.

## NOTICE OF SERVICE OF PROCESS

Date Processed: 18-APR-01                          Transmittal #: AL1134453C        ALL

To: DENISE PETERS BRENNAN-MAC X2406-011            Redirect sent to:
    WELLS FARGO HOME MORTGAGE, INC
    1 HOME CAMPUS
    DES MOINES IA 50328-0001

### TYPE OF REPRESENTATION: Statutory

*We enclose the following documents which were served upon:*
                          CSC-Lawyers Incorporating Service Incorporated
*as registered agent in  Alabama         for*
                          WELLS FARGO HOME MORTGAGE, INC. (ID#: 1901284)
*Documents were served on 18-APR-01      via Certified Mail*        ID#: 70993400001653507670

Title of Action: Meiosa Jacobs-Allender, et al.                    Case #: CV 0101894 JDC
                 vs. Crossland Mortgage Corporation. et al.
        Court: Circuit Court of Jefferson County, AL
Nature of Case:
                 class action re excessive fees

| | | |
|---|---|---|
| X   Summons | _____ Notice of Mechanic's Lien | _____ A self-addressed stamped |
| X   Complaint | _____ Notice of Attorney's Lien | envelope enclosed |
| _____ Garnishment | _____ Notice of Default Judgment | _____ Duplicate copies of the Notice |
| _____ Subpoena | | and Acknowledgement enclosed |

_____ Other:

Answer Due: w/in 30 days after service
Documents Sent: Federal Express              ID#: 827071884083
Call Placed: No call placed                  Spoke to: N/A
Comments: none

Attorney for Claimant:
         David R. Donaldson
         Two North Twentieth Building
         2 No. 20th St.. Ste. 1100
         Birmingham, AL 35203
         205/879-9994

Form Prepared By: Ethleen Bazzell
*Please acknowledge receipt of this notice and the enclosures by signing and returning this acknowledgement copy. A business reply envelope is enclosed for your convenience.*

DATE RECEIVED:_____     CLIENT SIGNATURE:_____
                             Acknowledgement Copy - to be returned to the address above

The information on this transmittal is provided for use in forwarding the attached document. This information does not constitute a legal opinion as te the facts or details of this action. These should be obtained from the documents themselves. The receiver of this transmittal is responsible for interpreting the documents and for taking appropriate action. If you have received only a copy of the transmittal, you should be aware that the documents have been sent to the original addressee.

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

MEIOSA JACOBS-ALLENDER,                                    )
JOSEPH ALLENDER, and VENIX JEFFERS,                        )
individually and as a representative of a class of         )
similarly situated persons,                                )
                                                           )
    Plaintiffs,                         )
                                                           )
vs.                                                        )
         4|ı⁶      )
                                                           )
WELLS FARGO HOME MORTGAGE,                                  )
INC. f/d/b/a CROSSLAND MORTGAGE                             )
CORPORATION; CROSSLAND MORTGAGE                             )
CORPORATION; DEFENDANTS A, B & C,                           )
intending to refer to those persons, firms,                )
corporations, or other legal entities doing business       )
as WELLS FARGO HOME MORTGAGE, INC.;                         )
DEFENDANTS C, D & E, intending to refer to                 )
those persons, firms, corporations, or other legal         )
entities doing business as CROSSLAND                       )
MORTGAGE CORPORATION; and                                  )
DEFENDANTS F, G & H, intending to refer to                 )
those persons, firms, corporations, or other legal         )
entities that were in contract with Plaintiffs with        )
respect to Plaintiffs' VA mortgage loans;                  )
DEFENDANTS I, J & K, intending to refer to                 )
those persons, firms, corporations, or other legal         )
entities that paid yield spread premiums, broker           )
premiums, service release premiums or similar fees )
to the Plaintiffs and/or class members' mortgage          )
brokers in connection with their loan closings;           )
DEFENDANTS L, M & N, intending to refer to                 )
those persons, firms, corporations, or other legal        )
entities that are the parent, subsidiary, predecessor, )
or successor in interest to any of the defendants,         )
named or fictitious, referred to herein; all of whose )
identities are unknown at the present time, but            )
will be substituted by amendment when                      )
ascertained,                                               )
                                                           )
    Defendants.                          )

CV0101894

CLASS ACTION COMPLAINT    JDC

JURY TRIAL DEMANDED

FILED IN OFFICE

MAR 23 2001

ANNE-MARIE ADAMS
Clerk

State of Alabama
Unified Judicial System

Form C-34 Rev 2/79

**SUMMONS -- CIVIL**

Case Number
CV0101894
CV0101894

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

Plaintiffs MEIOSA JACOBS-ALLENDER, et al., vs. Defendant CROSSLAND MORTGAGE CORPORATION, et al.

NOTICE TO Wells Fargo Home Mortgage, Inc. c/o CSC-Lawyers Incorporating System, Inc., 150 S. Perry Street, Montgomery, AL 36104

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFF'S ATTORNEY DAVID R. DONALDSON, WHOSE ADDRESS IS TWO NORTH TWENTIETH BUILDING, 2 NORTH 20TH STREET, SUITE 1100, BIRMINGHAM, AL 35203. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __30__ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT. FILED IN OFFICE

MAR 2 3 2001

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by either rules 4.1(b)(2)(b) E.2(b)(A)(B) E.4(b)(A)(B) Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and copy of the complaint in this action upon defendant.

This service by certified mail of this summons is initiated upon the written request of_____ pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

MAR 2 3 2001           Anne Maria Adams

DATE                    CLERK/REGISTER                    By:_____

ιETURN ON SERVICE:

Certified Mail return receipt received in this office on (Date)_____
(Return receipt hereto attached).

I certify that I personally delivered a copy of the Summons and Complaint to_____
_____ in _____ County, Texas on
(Date)_____.

_____
TE          SERVER SIGNATURE

ODRESS
SERVER _____
          TYPE OF PROCESS SERVER

COME NOW the Plaintiffs, Meiosa Jacobs-Allender, Joseph Allender and Venix Jeffers, individually and on behalf of a nationwide class of similarly-situated persons, and hereby bring this complaint against Defendants Wells Fargo Home Mortgage, Inc. f/d/b/a Crossland Mortgage Corporation ("Wells Fargo"); Crossland Mortgage Corporation ("Crossland"), and Fictitious Defendants A through N, collectively referred to herein as "Defendant," for causes of action arising from Defendant's payments of kickbacks and/or referral fees to mortgage brokers in connection with the origination of VA mortgage loans.

## THE PARTIES

1.     At all times material to this action, Plaintiffs Meiosa and Joseph Allender (the "Allenders") have been adult residents of the State of Maryland. On June 29, 2000, the Allenders purchased their residence located at 8237 Brattle Road, Pikesville, Maryland 21208, and secured that purchase through a mortgage loan funded by Defendant.

2.     At all times material to this action, Plaintiff Venix Jeffers ("Jeffers") has been an adult resident of the State of Maryland. On March 24, 2000, Jeffers purchased his residence located at 1008 Creek Street, Baltimore, Maryland 21230, and secured that purchase through a mortgage loan funded by Defendant.

3.     At all times material to this action, Defendant Wells Fargo was a corporation organized and existing under the laws of the State of California, which was and continues doing business within this district. In January 2001, Wells Fargo acquired Crossland through merger and acquisition.

4.     At all times material to this action, Defendant Crossland was a corporation organized and existing under the laws of the State of Utah, which was and continues doing business within this district.

2

5.   Fictitious Defendants A through N are defined in the style of this complaint, which style is incorporated by reference as if fully set forth herein.

## JURISDICTION AND VENUE

6.   This Court has jurisdiction over this action pursuant to Ala. R. Civ. P. 4.2. Defendant transacted business within this State; contracted to supply services or goods in this State; caused tortious injury or damage by an act or omission in this State; caused tortious injury or damage in this State by an act or omission outside this State and regularly does or solicits business, or engaged in a persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this State; and/or otherwise has some minimum contacts with this State such that under the circumstances it is fair and reasonable to require this defendant to defend this action in this State.

7.   Venue is proper in this Court pursuant to Ala. Code §§ 6-3-1 and 6-3-7. Defendant does business in this county by agent and was doing business in this county at the time of the this cause of action arose.

## FACTUAL ALLEGATIONS

8.   Wells Fargo Home Mortgage, Inc. f/d/b/a Crossland Mortgage Corporation is a residential mortgage lender. Defendant conducts business operations throughout the United States, including the state of Alabama.

9.   Throughout the class period defined *infra* in paragraph 39, the Defendant made or funded residential mortgage loans, including "federally related mortgage loans" as that phrase is defined by RESPA at 12 U.S.C. § 2602(l) and at 24 C.F.R. § 3500.2(3), to the Plaintiffs and other borrowers. In particular, Defendant made and funded VA, as well as conventional and FHA, residential mortgage loans. Upon information and belief, Defendant funded in excess of

3

1,000 VA loans in each of the last six years.

10.    At all times during the class period defined *infra* in paragraph 30, Defendant worked through and obtained business from "mortgage brokers," as that phrase is defined by Regulation X at 24 C.F.R. § 3500.2(8), who contracted with the named Plaintiffs and other class members.

11.    As part of its process for funding mortgage loans, the Defendant, on a daily basis publishes and provides to mortgage brokers around the country its rate sheet showing its "par" interest rate for each type of mortgage offered by the Defendant. "Par" is the lowest interest rate at which the Defendant will originate a mortgage for qualified borrowers without charging discount points. Said rate sheet also offers brokers yield spread premiums for loans originated at above-par rates.

12.    The Defendant offers yield spread premiums in exchange for brokers' referrals of above-par loans. Therefore, the yield spread premiums are kickbacks and/or referral fees. The yield spread premiums are not payment for goods or services within the meaning of RESPA § 8(c), 12 U.S.C. § 2607(c). At the time the yield spread premium is offered by way of the rate sheet, the Defendant has no knowledge of how much work will be performed by the broker or how much the broker will charge for its services. The yield spread premium is calculated based on the "spread" between "par" and the agreed-upon interest rate and is unrelated to the value of the brokers' services. The yield spread premium is paid without regard to either the amount of work performed by the brokers or the amount of compensation paid by class members to the brokers.

13.    Mortgage brokers who originate a loan with the Defendant are compensated for the services that they perform in connection with those loan originations either through the direct

4

payment of funds to the mortgage broker by class members, or by payment of an origination fee or discount points on the mortgage loan. Therefore, Defendant's payment of the yield spread premiums is a violation of § 8 because the yield spread premiums are duplicate payments to the brokers. Duplicate fees violate RESPA § 8. *See* 24 C.F.R. § 3500.14(c).

### Meolsa and Joseph Allender

14.    Meiosa Allender is a veteran who served the United States of America in the National Guard from 1992 until 1998. Her husband, Joseph, is a correctional officer.

15.    On or about June 29, 2000, the Allenders closed on a VA loan to purchase their home.

16.    The VA loan was processed by a mortgage broker, Affinity Mortgage Corporation (hereinafter, "Affinity"), and Defendant was the true lender that table-funded the loan. Affinity did not fund the loan, nor did it lend Plaintiff any money.

17.    The Allenders' VA loan at issue is a "federally related mortgage loan" as that term is defined in RESPA, 12 U.S.C. § 2602.

18.    The principal amount of the VA loan the Allenders received from Defendant was $139,740.00. In connection with the Allenders' loan, Defendant and Affinity charged and collected the following fees:

| Line 801 | Loan Origination Fee 1% to Affinity | $1,397.40 |
| Line 803 | Appraisal Fee to Affinity | $325.00 |
| Line 804 | Credit Report Fee to Affinity | $86.00 |
| Line 808 | VA Funding Fee to VA Admin. | $3,740.00 |
| Line 810 | Underwriting Fee to Defendant (Paid by Seller) | $310.00 |
| Line 811 | Yield Sprd Premium [of .625%] to Affinity | $873.38 |

19.    The Allenders' HUD-1 Settlement Statement ambiguously reflected on line 811 that Defendant paid the broker a "Yield Sprd Premium" equal to $873.38. This payment, which

5

was equal to approximately .625% of the loan amount, was paid to Affinity in addition to the 1% loan origination fee Affinity received directly from the Allenders at closing and was tied to the above par interest rate secured.

20.     The total fees received by Affinity exceeded $2,270, or 1.6% of the loan amount.

21.     As a direct and proximate result of the illegal and excessive fees and charges collected in connection with the Allenders' VA loan, the Allenders have (a) suffered financial loss and (b) received an interest rate for their VA mortgage loan that was in excess of the rate for which they qualified.

### Venix Jeffers

22.     Venix Jeffers is a veteran who served in the United States Army from 1952 through 1954. Jeffers was stationed in Korea during the Korean War and was wounded in combat.

23.     On or about March 24, 2000, Plaintiff Jeffers closed on a VA loan to purchase his home.

24.     The VA loan was processed by a mortgage broker, Allied Mortgage (hereinafter, "Allied"). Defendant was the true lender that table-funded the loan. Allied did not fund the loan, nor did Allied lend Plaintiff any money.

25.     Jeffer's loan at issue is a "federally related mortgage loan" as that term is defined and used by RESPA, 12 U.S.C. § 2602.

26.     The principal amount of the VA loan Plaintiff Jeffers received from Defendant was $45,500.00. In connection with Jeffers' loan, Defendant and Allied charged and collected the following fees:

6

| Line 801 | Loan Origination Fee [.12%] to Allied | $ 55.00 |
| Line 802 | Loan Discount [of 3%] to Allied | $1,365.00 |
| Line 803 | Appraisal Fee to Allied $ 300 (P.O.C.) | |
| Line 804 | Credit Report Fee to Allied $24 (P.O.C.) | |
| Line 808 | Amortization Schedule/Tax Service Fee | |
| | to Defendant | $ 91.00 |
| Line 809 | Processing Fee (Paid by Seller) | $ 395.00 |
| Line 813 | Mortgage Broker Premium [of 2.375%] to Allied | $ 1080.63 |
| Line 814 | Underwriting Fee to Defendant (Paid by Seller) | $ 310.00 |

27. Plaintiff Jeffers also paid the broker Discount Points equal to $1,365.00, or 3% of the amount loaned by Defendant. Such discount points are prohibited on VA loan transactions when the borrower is purchasing a home.

28. Jeffers' HUD-1 Settlement Statement also ambiguously reflects on line 813 that Defendant paid the broker a "Premium" equal to $1080.63. This payment, which was equal to approximately 2.375% of the loan amount, was paid to Allied in addition to the loan origination fee and discount points Allied received directly from Plaintiff Jeffers at closing and was tied to the above par interest rate secured.

29. Such lender paid broker premiums are prohibited on VA loan transactions when fees of 1% have already been paid in connection with the origination of the mortgage.

30. The total fees received by Allied, as the mortgage broker, from Jeffers, or on Jeffers' behalf, exceeded $2,500, or 5.49% of the loan amount.

31. As a direct and proximate result of the illegal and excessive fees and charges collected in connection with Jeffers' VA loan, Jeffers has (a) suffered financial loss and (b) received an interest rate for his VA mortgage loan that was in excess of the rate for which he qualified.

32. Named Plaintiffs' contracts with Defendant prohibit the charging of fees that are prohibited by law. Paragraphs 5 and 11 of Plaintiffs' standard form VA contract with Defendant

7

provides as follows:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is
finally interpreted so that the interest or other loan charges collected or to be
collected in connection with this loan exceed the permitted limits, then (i) any
such loan charge shall be reduced by the amount necessary to reduce the charge to
the permitted limit; and (ii) any sums already collected from me which exceeded
permitted limits will be refunded to me. The Note Holder may choose to make
this refund by reducing the principal I owe under this Note or by making a direct
payment to me. If a refund reduces principal, the reduction will be treated as a
partial prepayment.
* * *

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In
addition to the protections given to the Note Holder under this Note, a Mortgage,
Deed of Trust or Security Deed (the "Security Instrument", dated the same date as
this Note, protects the Note Holder from possible losses which might result if I do
not keep the promises which I make in this Note. That Security Instrument describes
how and under what conditions I may be required to make immediate payment in full
of all amounts I owe under this Note. Some of those conditions are described as
follows:

> Regulations (38 C.F.R., Part 36) issued under the Department of Veteran's
> Affairs ("V.A.") Guaranteed Loan Authority (39 U.S.C. Chapter 37) and in
> effect on the date of loan closing shall govern the rights, duties and liabilities
> of the parties to this loan and any provisions of this Note which are
> inconsistent with such regulations and are hereby amended and supplemented
> to conform thereto.

33. Laws which apply to VA loans limit loan charges that a lender and/or broker may

assess to 1% of the loan amount. Defendant charged, collected and exchanged fees that far exceeded

the 1% maximum and that are prohibited by law on Plaintiffs' VA loan transactions. *See* 38 C.F.R.

§ 36.4312; *see also* VA Handbook Number 26-7; VA Pamphlet 26-7, Ch. 6, Sec. I. Fees and Charges

at 6.02.

34. The Plaintiffs VA loans are subject to the Department of Veteran's Affairs'

8

Regulations, which were in effect on the date of Plaintiffs' loan closing and which govern the rights, duties and liabilities of the parties with respect to such loans.

35. Likewise, 34 C.F.R. § 36.4312 (d)(6) prohibits the charging of discount points to a VA borrower in connection with the purchase of a residence.

36. The Department of Veterans Affairs also limits the total fees charged for any loan processing services to 1% of the principal amount of the loan.

37. The fees charged, collected and exchanged by Defendant on the named Plaintiffs' transactions exceeded the permissible fee limits on VA loans. Defendant charged, collected or otherwise exchanged prohibited fees on named Plaintiffs' VA loan transactions. Such fees were unearned, excessive and unsupported by valid consideration.

38. By charging, collecting or otherwise exchanging prohibited fees on the Plaintiffs' and class member's VA loan transactions, Defendant breached its contracts with said Plaintiffs and class members and violated federal law, including RESPA. The foregoing caused named Plaintiffs and the class damage.

## Class Allegations

39. Pursuant to Alabama Rule of Civil Procedure 23(b)(2) and 23(b)(3), Plaintiffs bring this action on their own behalf and on behalf of a national class. The class consists of all persons in the United States who, at any time, during the applicable limitations period, obtained a VA loan funded or table-funded by Defendant where the aggregate charges and fees relating to the costs of loan origination (including loan origination fees, lender paid revenue to brokers, yield spread premiums, rebates, service release premiums, processing fees, application fees, administrative fees, broker fees, lender fees, underwriting fees, document preparation fees and the like) exceeded one percent (1%) of the amount of the loan, or otherwise included an illegal

9

charge or fee.

40. Plaintiffs, on behalf of themselves and all other similarly situated individuals throughout the United States, seek a declaratory judgment, injunctive relief, restitution with interest, actual damages, treble damages, costs, penalties, and/or attorneys' fees, as well as any other relief properly awarded under the circumstances.

41. The requirements of Ala. R. Civ. P. 23(a) and 23(b) are satisfied and class certification is proper.

42. The members of the class are so numerous that joinder of all members is impracticable. Defendant has originated, funded and been party to thousands of loan transactions throughout the United States where improper fees were charged, collected and exchanged. Plaintiffs allege upon information and belief in excess of one thousand mortgagors incurred improper charges and suffered damage by Defendant in the manner complained of herein. Upon information and belief, in excess of one hundred of these transactions occurred in the state of Alabama alone during the class period. Plaintiffs seek to enjoin Defendant from further similar acts in the future.

43. There are questions of law and fact common to the claims of all putative class members concerning whether Defendant violated its contracts with mortgagors, RESPA, and other law described herein, by charging, collecting and/or exchanging fees that are excessive and prohibited on VA loans.

44. Named Plaintiffs' claims are typical of the claims of the members of the class. Plaintiffs have the same interests as all members of the class. Plaintiffs' loan documents and HUD-1 settlement statement reflect prohibited fees charged, collected and exchanged by Defendant. The charges are typical of those of the other members of the class.

10

45.     Named Plaintiffs will fairly and adequately represent and protect the interests of
the members of the class and has retained competent counsel experienced in class litigation.
Plaintiffs are members of the class and do not have interests antagonistic to or in conflict with
members of the class. Neither Named Plaintiffs nor their counsel have any interests which might
cause them not to pursue this claim vigorously. Named Plaintiffs' claims are the same as those
of the claims of the class, which all arise from the same operative facts and are based on the same
legal theories.

46.     A class action is superior to other available methods for the fair and efficient
adjudication of this controversy since the membership of the class is so numerous and
sufficiently geographically widespread that joinder of all members is impracticable.
Furthermore, the expense and burden of any non-class litigation may well make it practically
impossible for the Plaintiffs or other persons to pursue this action individually. There will be no
difficulty in the management of this case as a class action.

47.     There are questions of law and fact common to the class which predominate over
questions solely affecting individual members of the class. These include:

(a)     Whether Defendant breached class members' contracts by charging,
        collecting or exchanging aggregate charges relating to the costs of loan
        origination (including loan origination fees, lender paid revenue to
        brokers, yield spread premiums, rebates, service release premiums,
        processing fees, application fees, administrative fees, underwriting fees,
        document preparation fees, broker fees, lender fees) which exceed one
        percent (1%) of the amount of the loan;

(b)     Whether Defendant breached class members' contracts by charging,
        collecting or exchanging aggregate charges that were otherwise illegal
        under federal law;

(c)     Whether the Defendant violated RESPA by giving fees, kickbacks or other
        things of value, including yield spread premiums or the like, to mortgage
        brokers for the purpose of making above par, federally related mortgage

11

loans;

(d)     Whether Defendant violated § 8(a) and/or (b) of RESPA, 12 U.S.C. §
        2607 *et seq*, by paying, retaining or exchanging prohibited fees, unearned
        fees, duplicative fees, and/or referral fees pursuant to the funding of a VA
        loan;

(e)     Whether the payment of yield spread premiums constitutes illegal and
        improper "kickbacks" or "referral fees" within the meaning of RESPA, §
        8(a), 12 U.S.C. § 2607(a) and is thus prohibited;

(f)     Whether the Defendant's payment of yield spread premiums to brokers
        constituted the splitting of fees in connection with the origination of
        federally-related mortgage loans within the meaning of RESPA, § 8(b),12
        U.S.C. § 2607(b);

(g)     Whether mortgage brokers would still be paid the illegal and improper
        yield spread premium if they secured an at or below-par interest rate
        mortgage loan for the class members;

(h)     Whether the Defendant consistently follows a uniform practice of paying
        yield spread premiums to mortgage brokers on loans where the interest
        rate is above par;

(i)     Whether the Defendant's payment of yield spread premiums to brokers
        constituted the payment of a bona fide salary or compensation or other
        payment for goods or facilities for services actually rendered within the
        meaning of RESPA, § 8(c), 12 U.S.C. § 2607(c);

(j)     Whether the Defendant's payment of yield spread premiums to brokers
        constituted duplicate payment for the brokers' goods or services within the
        meaning of 24 C.F.R. § 3500.14(c), thereby resulting in violations of
        RESPA, § 8;

(k)     Whether the unlawful acts alleged herein were engaged in by Defendant;
        and

(l)     Whether Defendant exchanged referral fees and things of value for the
        referral of business.

48.     These common questions of law and fact predominate over any issue affecting

individual class members.

49.     Certification of the class pursuant to Ala. R. Civ. P. 23(b)(2) is appropriate

12

because Defendant acted uniformly with respect to members of the class. Injunctive and declaratory relief is appropriate as Defendant continues to act in the manner complained of. Injunctive relief against further misconduct, complained of within, is important to prevent class members, potential class members and future mortgagors from incurring additional overcharges in the future.

50. Certification of the class pursuant to Ala. R. Civ. P. 23(b)(3) is also appropriate. A class claim is the only appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendant are non-existent because it is not feasible for them to bring individual claims. The nature of the practice complained of--the imposition of improper charges on large numbers of individuals, resulting in significant damages to the class, is such as to make a class claim essential. Management of this class claim is likely to present few, if any, difficulties.

## COUNT I
## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT 12 U.S.C. § 2607

51. Plaintiffs incorporate the allegations of all the foregoing paragraphs by reference, as if fully set forth herein.

52. Based upon the foregoing facts, the Defendant violated RESPA with respect to Plaintiffs and all other class members by giving or paying fees, kickbacks or other things of value (including "Yield Spread Premiums," "Broker Premiums" and the like) to the respective mortgage brokers pursuant to an agreement or understanding that business incident to or a part of a real estate settlement service involving above par "federally related mortgage loans" would be referred to the Defendant by mortgage brokers.

13

53.     The Defendant's payments to mortgage brokers constituted a violation of § 8(a) of RESPA, 12 U.S.C. § 2607(a), which prohibits the payment of referral fees or kickbacks in connection with the origination of federally-related mortgage loans.

54.     The Defendant's payment to the broker also constituted a violation of § 8(b) of RESPA, 12 U.S.C. § 2607(b), which prohibits the splitting of fees in connection with the origination of federally-related mortgage loans.

55.     Pursuant to 12 U.S.C. § 2607(d)(2), Plaintiff and the class members are entitled to recover, and they hereby seek to collect, from the Defendant an amount equal to three times the amount of any and all charges for "settlement services" paid directly or indirectly by the Plaintiff and all other class members (including any POC-amounts such as yield spread premiums or the like paid by the Defendant to mortgage brokers), as well as any and all other amounts or damages allowed to be recovered by RESPA.

## COUNT II
## BREACH OF CONTRACT

56.     Plaintiffs incorporate the allegations of all the foregoing paragraphs by reference, as if fully set forth herein.

57.     Plaintiffs' and other class members' standard form contracts (notes, mortgages and deeds of trust) with Defendant require the lender to comply with federal law, and in particular the laws and regulations governing the making of VA mortgage loans. Such laws and regulations are incorporated into each VA mortgage loan and are a material term of same.

58.     Plaintiffs' and other class members' standard form contracts (notes, mortgages and deeds of trust) with Defendant prohibit a lender or other person involved in the origination, processing and funding of a VA mortgage loan from charging, collecting and exchanging fees in the

14

aggregate that exceed the maximum limits established by the Department of Veterans Affairs and law. *See* Allenders' Note at ¶¶ 5, 11, attached as Exhibit A; Allenders' Deed of Trust at ¶ 13, attached as Exhibit B; Jeffers Note at ¶¶ 5, 11, attached as Exhibit C; Jeffers' Deed of Trust at ¶ 13, attached as Exhibit D.

59.     Laws and regulations established by the Department of Veterans Affairs do not authorize the charging, collection and/or exchange of aggregate fees relating to the cost of loan origination exceeding 1% of the amount of the loan. *See, e.g.,* 38 C.F.R. § 36.4312; VA Handbook Number 26-7; VA Pamphlet 26-7, Ch. 6.

60.     This 1% limit on the aggregate fees charged, collected and exchanged applies regardless of the manner in which the fee is denominated and includes, without limitation: loan origination fees; rebates; revenue paid to a mortgage broker by a lender; yield spread premiums; service release premiums; broker fees; excess fees charged above that paid to third-party vendors; underwriting fees; document preparation fees; loan application fees; loan processing fees; administrative fees; tax service fees; data processing fees; appraisal fees; charges for postage; courier, phone, and other overhead; escrow fees; loan closing fees; settlement fees; broker fees; lender fees; and packaging fees.

61.     Laws and regulations established by the Department of Veterans Affairs also prohibit the charging, collection and/or exchange of discount points in connection with the purchase of a residence by a veteran.

62.     Defendant charged, collected and/or exchanged prohibited and excessive fees in relation to the Plaintiffs' loan transaction. The fees charged, collected and/or exchanged on Plaintiffs' transactions, including the loan origination fee, loan discount fee, Yield Spread Premium, Broker Premium, administrative fee, and other charges, exceeded the one percent (1% ) limitation

15

on the aggregate fees that can be charged and collected on a VA loan and/or required Plaintiffs to pay fees or charges that were illegal.

63. Defendant similarly charged, collected and/or exchanged prohibited and excessive fees in relation to other class members' VA loan transactions.

64. By reason of the foregoing, Defendant breached its contracts with Plaintiffs and other class members. Defendant's breach has caused financial loss and damage to Plaintiffs and other class members.

65. Plaintiffs seek to have this practice enjoined and declared unlawful.

66. Plaintiffs and the Class also seek to collect from Defendant their actual damages, as well as any and all other amounts, penalties or damages allowed to be recovered by law, including reasonable costs and attorneys' fees.

## COUNT III
## CLAIMS AGAINST FICTITIOUS DEFENDANTS

67. Plaintiffs incorporate the allegations of all the foregoing paragraphs by reference, as if fully set forth herein.

68. Plaintiffs allege that Fictitious Defendants A through N are liable and responsible for the illegal payments described herein and are liable and responsible under all counts set forth in this complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant judgment against Defendant, its agents, servants, employees and all other persons or entities acting on its behalf, and enter judgment in favor of Plaintiffs and the class as follows:

(1) Declaring that this action is a proper class action brought pursuant to and maintainable under Alabama Rules of Civil Procedure 23;

16

(2)   Declaring that Defendant breached its contracts with Plaintiffs (and the Class);

(3)   Declaring that Defendant has violated the laws stated herein;

(4)   Permanently enjoining Defendant from continuing its practice of charging, collecting and exchanging prohibited fees and things of value on VA loan transactions;

(5)   Awarding Plaintiffs and the Class their actual damages, along with prejudgment interest, penalties, treble damages, attorneys' fees, costs, expenses and any other remedy available;

(6)   Awarding Plaintiffs and the Class proper restitution with interest;

(7)   Ordering that Defendant account for and refund all fees and charges received on the transactions described within and disgorge all profits made as a result of the activities complained of;

(8)   Such other relief and award to which Plaintiffs and the Class may be entitled, or as determined just and appropriate by this Court.

## Prayer for Jury Trial

Plaintiffs respectfully pray a trial by jury on all matters alleged in this Complaint.

David R. Donaldson (ASB-0340-O64D)
Tammy McClendon Stokes (ASB-6084-K69T)
Two North Twentieth Building
2 North 20th Street, Suite 100
Birmingham, AL 35203
(205) 879-9994
(205) 879-8886 (facsimile)

Of Counsel:
Kieron F. Quinn
Richard S. Gordon
Martin E. Wolf
Quinn, Gordon & Wolf, Chtd.
40 W. Chesapeake Avenue, Ste. 408
Towson, Maryland 21204
(410) 825-2300
(410) 825-0066 (facsimile)

17

**Please serve the Defendants by Certified Mail at the following addresses:**

Crossland Mortgage Corporation
c/o Prentice Hall Corporation System, Inc.
150 S. Perry Street
Montgomery, AL 36104

Wells Fargo Home Mortgage, Inc.
c/o CSC - Lawyers Incorporating System, Inc.
150 S. Perry Street
Montgomery, AL 36104